## UNITED STATES DISTRICT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **STEPHON FORD JR. and** | ) |
| **VIRGINIA FORD,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **Civil Action No.** |
| | ) _____ |
| **CLAYTON COUNTY, GEORGIA,** | ) |
| **OFFICER STEPHEN D. BUICE,** | ) **JURY TRIAL DEMANDED** |
| **OFFICER BRANDYN MCKAY,** | ) |
| **JOHN DOE 1, and** | ) |
| **JOHN DOE 2,** | ) |
| | ) |
| **Defendants.** | ) |

## COMPLAINT

COMES NOW Plaintiffs, Stephon Ford Jr. and Virginia Ford, by and through their attorney, and states and alleges, as follows:

## INTRODUCTION

### 1.

This cause of action arises out of the unlawful use of deadly force against Stephon Ford III (herein after "Ford") at or near 334 West Ave., Jonesboro, Clayton County, Georgia 30236 on September 2, 2023 (hereinafter "Incident Location" and "Incident Date", respectively).

2.

This cause of action for monetary damages is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Ford's clearly established rights as secured by the Fourth and Fourteenth Amendments to the United States Constitution and Georgia state law against Defendants herein for their respective violations of Ford's right to be free from the unlawful use of excessive and deadly force.

3.

This cause of action is also brought for monetary damages pursuant to Georgia's Wrongful Death Statute under Chapter 4 of Title 51 of the Official Code of Georgia Annotated.

JURISDICTION AND VENUE

4.

This Court has concurrent jurisdiction in this case because all incidents, events, and occurrences giving rise to this action occurred in the State of Georgia.

5.

Venue is proper in this Court based on the residence of several named Defendants herein as "suits against joint obligors, join tort-feasors, joint promisors,

copartners, or joint trespassers residing in different counties may be tried in either county." <u>GA. Const. Art. VI, § 2, ¶V</u>

PARTIES

6.

Plaintiff Stephon Ford Jr. and Virginia Ford (hereinafter "Parents") are citizens of the United States and the State of Georgia, married, and the biological parents and guardians of Ford.

7.

Ford was an African-American male, age 17 years old on the Incident Date, without children, without a spouse, not otherwise emancipated, and residing with his Parents at the time of his death.

8.

Pursuant to O.C.G.A. §51-4-4 and O.C.G.A. §19-7-1(c), Plaintiff's have standing to bring this action.

9.

Defendant Clayton County, Georgia (hereinafter "Defendant Clayton County") is a duly organized and existing county government under the laws of the State of Georgia which has the capacity to sue and be sued, which may be served

through the Chairwoman of its Board of Commissioners, Dr. Alieka Anderson-Henry, at 112 Smith Street, Annex 1, Jonesboro, Georgia 30236.

10.

Defendant Clayton County funds, manages, maintains, and operates the Clayton County Police Department (hereinafter "Clayton County P.D.")

11.

On March 18, 2025, Defendant Clayton County was presented with Plaintiff's claim, pursuant to O.C.G.A. § 36-11-1, via a letter addressed to then Clayton County Chairman Jeffrey E. Turner and mailed on March 1, 2024 via United States Postal Service Return Receipt No. 7017 1450 0001 7775 6790.

12.

Defendant Officer Stephen D. Buice (hereinafter "Defendant Buice") was at all times material hereto employed by Clayton County P.D. as a duly appointed and sworn police officer, and was acting in his individual capacity, under color of state law, and within the scope of his employment.  Under information and belief, Defendant Buice is a resident of Clayton County and may be served at Clayton County P.D. located at 7911 North McDonough Street, Jonesboro, Georgia 30236.

13.

Defendant Officer Brandyn McKay (hereinafter "Defendant McKay") was at all times material hereto employed by Clayton County P.D. as a duly appointed and sworn police officer, and was acting in his individual capacity, under color of state law, and within the scope of his employment.  Under information and belief, Defendant Buice is a resident of Clayton County and may be served at Clayton County P.D. located at 7911 North McDonough Street, Jonesboro, Georgia 30236.

14.

Defendant John Doe 1 is believed to be a law enforcement officer employed by a police department in Clayton County or a neighboring county or a governmental entity and to have discharged a firearm or supervised an officer who discharged a firearm on the incident date.  As the identity of this person or entity is unknown, Plaintiffs will seek to have the proper party named as a Defendant to this action.

15.

Defendant John Doe 2 is believed to be a law enforcement officer employed by a police department in Clayton County or a neighboring county or a governmental entity and to have discharged a firearm or supervised an officer who discharged a firearm on the incident date.  As the identity of this person or entity is

unknown, Plaintiffs will seek to have the proper party named as a Defendant to this action.

RELEVANT FACTS

16.

During the early morning hours of the Incident Date, Ford, along with two other African-America males, Nikolas Hart (hereinafter "Hart") and Deiago Smith (hereinafter "Smith"), were approached by Officer T. Bowe and Officer Singh from the Jonesboro Police Department (hereinafter "Jonesboro P.D.") in the parking lot of the Home 1 extended stay motel located at 8240 Tara Boulevard, Jonesboro, Clayton County, Georgia 30236.

17.

During the course of the stop, the officers requested identification from the individuals and received the same.

18.

During the course of the stop, Officer Singh allegedly saw paraphernalia and marijuana inside of a bag which was allegedly in the possession of Ford, conducted a search of the bag, and decided to arrest Ford.

19.

While Officer T. Bowe was attempting to place Ford in handcuffs, Hart allegedly fled on foot from the scene.  Officer T. Bowe then allegedly gave chase after Hart, caught Hart, placed Hart in custody, and found a firearm upon a search of Hart's person.

20.

Ford allegedly fled the scene after Officer T. Bowe gave chase after Hart.

21.

 A Jonesboro P.D. police officer requested backup from Clayton County P.D.

22.

Clayton County P.D. canine handler, Sgt. J. Williams, and K-9 Waro arrived at the area of Home 1 to assist.

23.

K-9 Waro allegedly tracked Ford to the wooded area behind the home located at the Incident Location where Ford was allegedly lying in brush.

24.

Allegedly after verbal commands were given by Sgt. J. Williams for Ford to come out, K-9 Waro was deployed, a single gunshot sounded, and K-9 Waro was stuck with a bullet.

25.

Officer T. Bowe allegedly alerted dispatch that "shots" were fired and set a perimeter around the Incident Location.

26.

K-9 Waro succumbed to its injuries.

27.

Several law enforcement agencies were involved in the perimeter and search of Ford around the Incident Location, including, but not limited to, Clayton County P.D., Jonesboro P.D., Fayette County Police Department, Fayetteville Police Department, Forest Park Police Department, Morrow Police Department, and Clayton County Sheriff's Office.

28.

Law enforcement officers on scene were giving reports that Ford shot and killed a police officer, as opposed to a canine.

29.

At some time later several hours later in the morning on the Incident Date, Defendant Buice and Defendant McKay allegedly encountered Ford laying on the ground in the same brush behind the Incident Location where K-9 Waro was struck with a bullet.

30.

Allegedly, a verbal command by Defendant Buice for Ford to show his hands was made immediately prior to three shots being fired.

31.

Ford was stuck by at least one bullet to the back of the head, killing him.

32.

Allegedly, after the three shots were fired, Defendant McKay approached the body of Ford.  It was allegedly found that Ford was laying atop a "jammed" firearm that was in his hand.

33.

Under information and belief, the firearm that was in Ford's hand was "jammed" during his encounter with K-9 Waro earlier in the morning.

34.

Under information and belief, Ford did not point a firearm at Defendant McKay or Defendant Buice as the "jammed" firearm was under his body.

35.

Under information and belief, Ford did not make any movements when Defendant McKay and Defendant Buice came upon his person laying in the brush.

36.

A resident in the area of the Incident Location reported hearing a gunshot during the morning of the Incident Date other than the one gun involving K-9 Waro and the three gunshots involving Defendant Buice and Defendant McKay.

37.

The Clayton County District Attorney's Office investigated this incident.

38.

Although the Clayton County District Attorney's Office declined to move forward with an indictment against any person, their investigation was not officially closed until some time after May 1, 2025.

39.

Plaintiffs are without evidence from the many agencies involved in this incident as their Open Record Requests were denied due to the case being open and under investigation.

COUNT 1:

42 U.S.C. § 1983 FOURTH AND FOURTEENTH AMENDMENT VIOLATION

40.

Plaintiffs are entitled to and do incorporate and reallege all proceeding paragraphs as though fully pleaded herein.

41.

Defendants violated Ford's constitutional right to be secure against unreasonable searches and seizure.

42.

Defendant Buice and Defendant McKay's use of deadly force against Ford was an unreasonable seizure.

43.

Defendant Buice and Defendant McKay acted under color of state law and within the scope of their employment with Clayton County P.D. when they shot Ford.

44.

Defendant Buice and Defendant McKay shot Ford in violation of his Fourth Amendment right to be free from an unreasonable seizure, which is actionable under 42 U.S.C. § 1983.

45.

The actions of shooting Ford by Defendant Buice and Defendant McKay was not objectively reasonable in light of the facts confronting the officers.

46.

The totality of the circumstances did not authorize Defendant Buice and Defendant McKay to shoot Ford.

47.

Ford laying on the ground with a "jammed" gun under him which was not displayed to officers did not pose an immediate threat to the safety of Defendant Buice and Defendant McKay or others.

48.

Defendant Buice and Defendant McKay did not have probable cause to believe that Ford posed a threat of serious physical harm to them or others.

49.

Ford was not resisting arrest or attempting to evade arrest by flight when Defendant Buice and Defendant McKay encountered him.

50.

It is not plausible to believe that Defendant Buice and Defendant McKay believed that the use of deadly force against Ford was necessary to prevent escape.

51.

It was feasible for Defendant Buice and Defendant McKay to give Ford some warning about the possible use of deadly force and the warning given was not proper and/or superficial.

52.

Ford would not have been shot or killed but for the unlawful acts of Defendant Buice and Defendant McKay under color of state law.

53.

The actions by Defendant Buice and Defendant McKay deprived Ford of his liberty without due process.

54.

Defendant Buice and Defendant McKay, individually and collectively, are liable to Plaintiffs for the wrongful death of Ford in violation of his Fourth

Amendment and Fourteenth Amendment constitutional rights under color of state law pursuant to 42 U.S.C. § 1983 and the Georgia Constitution.

55.

Plaintiffs are entitled to the full value of the life of Ford, as shown by the evidence.

56.

According to mortality tables, Ford was expected to live for at least 58 more years following the Incident Date.

57.

Plaintiffs claim all legal damages for the value of Ford's full remaining life following his death on the Incident Date in the amount of Eight Million, Seven Hundred Thousand Dollars ($8,700,000.00).

58.

Plaintiffs are entitled to special and general damages, including attorney's fees and expenses in an amount not less than Eight Million, Seven Hundred Thousand Dollars ($8,700,000.00).

<u>COUNT 2:</u>

<u>42 U.S.C. § 1983 CIVIL RIGHTS CLAIM AGAINST</u>

<u>DEFENDANT CLAYTON COUNTY BASED ON INADEQUATE TRAINING,</u>

<u>INADEQUATE SUPERVISION, AND CONDONING ILLEGAL ACTS</u>

59.

Plaintiffs are entitled to and do incorporate and reallege all proceeding paragraphs as though fully pleaded herein.

60.

Defendant Clayton County is liable for a violation of Ford's civil rights under color of state law proximately caused by the inadequate training, supervision, or discipline of Defendant Buice and Defendant McKay acting within the scope of their employment.

61.

Defendant Clayton County is responsible for supervising, training, or discipline specifically related to the use of excessive and deadly force by any Clayton County P.D. officer.

62.

Defendant Clayton County implemented policies, directives, ordinances, regulations, or decisions officially adopted and promulgated by the Clayton County

P.D., and subsequently followed by its officers, resulting in the violation of Ford's

constitutional rights.

63.

Defendant Buice and Defendant McKay were inadequately trained and

supervised to believe that they had probable cause to shoot Ford while he was

laying on the ground with no gun displayed and not posing a threat of serious

physical harm to anyone.

64.

Defendant Buice and Defendant McKay acted in accordance with their

inadequate training, supervision, and discipline as police officers and employees of

the Clayton County P.D.  This inadequate training, supervision, and discipline

caused and contributed to the violation of Ford's civil rights.

65.

Defendant Clayton County knew of should have known that Defendant

Buice and Defendant McKay would use excessive and deadly force against Ford in

violation of his civil rights and under color of state law.

66.

Defendant Clayton County failed and refused to pursue an appropriate

investigation of the events surrounding Ford's death.  As a result, Defendant

Clayton County failed to penalize, discipline, or criticize Defendant Buice and Defendant McKay for unjustifiably shooting Ford under color of state law.

67.

Defendant Clayton County tolerated, approved, condoned, and ratified the unlawful, tortious conduct of Defendant Buice and Defendant McKay in unjustifiably shooting Ford while he was laying on the ground with no gun displayed and not posing a threat of serious physical harm to anyone.

68.

The conduct and practices of Defendant Clayton County proximately caused and contributed to the wrongful death of Ford.

69.

Defendant Clayton County is liable for the violations of Ford's civil rights under color of state law pursuant to 42 U.S.C. § 1983.

70.

Plaintiffs are entitled to the full value of the life of Ford, as shown by the evidence.

71.

According to mortality tables, Ford was expected to live for at least 58 more years following the Incident Date.

72.

Plaintiffs claim all legal damages for the value of Ford's full remaining life following his death on the Incident Date in the amount of Eight Million, Seven Hundred Thousand Dollars ($8,700,000.00).

73.

Plaintiffs are entitled to special and general damages, including attorney's fees and expenses in an amount not less than Eight Million, Seven Hundred Thousand Dollars ($8,700,000.00).

<u>COUNT 3:  STATE CLAIM FOR WRONGFUL DEATH</u>

74.

Plaintiffs are entitled to and do incorporate and reallege all proceeding paragraphs as though fully pleaded herein.

75.

Per Georgia law, homicide is the killing of another human being unless legally justified.

76.

Defendant Buice and Defendant McKay, acting independently and jointly, we not legally justified in killing Ford.

77.

Defendants are liable to Plaintiffs for the wrongful death of Ford, which resulted from the crime, criminal negligence, or other negligence of Defendant Buice and Defendant McKay acting in the scope of their employment.

78.

Plaintiffs are entitled to the full value of the life of Ford, as shown by the evidence.

79.

According to mortality tables, Ford was expected to live for at least 58 more years following the Incident Date.

80.

Plaintiffs claim all legal damages for the value of Ford's full remaining life following his death on the Incident Date in the amount of Eight Million, Seven Hundred Thousand Dollars ($8,700,000.00).

WHEREFORE, Plaintiff demands a trial by jury and prays for a judgment against all above-named and to be named Defendants as follows:

a) As to Count 1, a monetary judgement against Defendant Buice and Defendant McKay for damages according to law, including reasonable attorney's fees and expenses;

b) As to Count 2, a monetary judgment against Defendant Clayton County, for damages according to law, including reasonable attorney's fees and expenses;

c)  As to Count 3, a monetary judgement against Defendant Buice and Defendant McKay for damages according to law, including reasonable attorney's fees and expenses; and

d) For such other and further relief as this Court deems just.

This the 2nd day of September, 2025.

Respectfully submitted,
**/s/ Frank T. Smith, Esq.**
Frank T. Smith, Esq.
Georgia Bar No. 657505
Attorney for Plaintiffs
The Smith Legal Group, LLC
970 Milstead Avenue N.E.
Conyers, Georgia 30012-4526
Telephone (678) 323-8114
Facsimile (678) 825-8878
frank@ftsmithlaw.com