**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| STEPHON FORD JR.; and VIRGINIA FORD,<br><br>Plaintiffs,<br><br>v.<br><br>CLAYTON COUNTY, GEORGIA; OFFICER STEPHEN D. BUICE; OFFICER BRANDYN MCKAY; JOHN DOE 1; and JOHN DOE 2,<br><br>Defendants. | CIVIL ACTION FILE<br>NO. 1:25-cv-04982 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OFFICER STEPHEN D. BUICE'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendant Officer Stephen D. Buice ("Officer Buice" or "this defendant") files this memorandum of law in support of his pre-answer motion to dismiss plaintiffs' complaint (Doc. 1). For the reasons below, this defendant requests that this Court dismiss plaintiffs' complaint against him with prejudice pursuant to Federal Rule of Civil Procedure 12.

## I. INTRODUCTION

This is a § 1983 civil rights lawsuit filed by Stephon Ford, Jr. and Virginia Ford ("plaintiffs") who bring this action on behalf of their son, Stephon Ford III

("Ford"). (Doc. 1, ¶¶ 6, 8). Plaintiffs allege that Ford was approached by Jonesboro Police Officers at an extended stay motel in Clayton County, Georgia, and during the course of the stop, one of the officers saw paraphernalia and marijuana inside of a bag that was in the possession of Ford. (Id., ¶¶ 1, 16–18). Plaintiffs allege that the Jonesboro officer "decided to arrest Ford," but while the officer was attempting to place Ford in handcuffs, he fled on foot. (Id., ¶¶ 19, 20). Plaintiffs allege that a Jonesboro officer then requested backup from Clayton County Police Department. (Id., ¶ 21).

Thereafter, Clayton County Police Department canine handler Sergeant Williams and K-9 Waro ("Waro") arrived at the area, and K-9 Waro tracked Ford behind a home where Ford was lying in "brush." (Id., ¶¶ 22, 23). Sergeant Willaims gave verbal commands to Ford to come out, and K-9 Waro was deployed. Plaintiff contends that a single gunshot sounded, and K-9 Waro was shot with a bullet and killed – although the complaint allegations are unclear, it is axiomatic that Ford is the one that shot K-9 Waro rather than surrender to Sergeant Williams. (Id., ¶¶ 24, 26).

A Jonesboro officer alerted dispatch that shots were fired and set a perimeter. (Id., ¶¶ 25, 27). Several law enforcement agencies responded to set the perimeter and to search for Ford, including Clayton County Police Department, Jonesboro Police Department, Fayette County Police Department, Fayetteville Police

Department, Forest Park Police Department, Morrow Police Department, and Clayton County Sheriff's Office. (Id., ¶ 27). Plaintiffs allege that "[l]aw enforcement officers on scene were giving reports that Ford shot and killed a police officer, as opposed to a canine." (Id., ¶ 28).

Plaintiffs contend that at some point thereafter, Clayton County Police Officer Buice, Officer Brandyn McKay ("Office McKay"), and Officer Buice's K-9 ("Goran") encountered Ford lying on the ground "in the same brush" where he had shot and killed K-9 Waro. (Id., ¶ 29). Plaintiffs allege that Officer Buice gave a verbal command to Ford to show his hands and then fired three shots with one bullet striking the back of Ford's head, killing him. (Id., ¶¶ 30, 31). Ford was found lying there "atop" a "'jammed' firearm that was in his hand." (Id., ¶ 32). Plaintiffs allege that the Clayton County District Attorney's Office investigated this incident, but did not bring any charges against "any person," which would also mean no charges were brough against Officer Buice or Officer McKay. (Id., ¶¶ 37, 38).

Based on the foregoing, plaintiffs assert a Section 1983 claim against Officer Buice and Officer McKay under the Fourth and Fourteenth Amendments of the United States Constitution and the "Georgia Constitution" based on his use of deadly force. (Id., Count I). Plaintiffs also assert a Section 1983 Monell claim against Clayton County based on theories of inadequate training, inadequate supervision, and "condoning illegal acts." (Id., Count II). Finally, plaintiffs assert a state law

claim for wrongful death against Officer Buice and Officer McKay. (Id., Count III). Plaintiffs seek compensatory damages and attorney's fees. (Id., Prayer for Relief).

Officer Buice now moves to dismiss all of plaintiffs' claims against him for ***four*** reasons. ***First,*** qualified immunity bars plaintiffs' Section 1983 claim against Officer Buice. ***Second,*** official immunity bars plaintiffs' state law claims against Officer Buice. ***Third,*** plaintiffs' claim under the Georgia Constitution is not a valid cause of action and the wrongful death claim independently fails to state a claim. ***Finally,*** because plaintiffs' underlying claims should be dismissed, their claims for attorney's fees should be dismissed as well.

## II. ARGUMENT AND CITATION OF AUTHORITY

### A. Qualified Immunity Bars Plaintiffs' Section 1983 Claims Against Officer Buice (Count I)

Qualified immunity "shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable officer would have known." Mullenix v. Luna, 577 U.S. 7, 11 (2015) (citation modified). Significantly, the immunity is "from suit rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). As such, the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991).

To claim qualified immunity, Officer Buice must first show he was performing discretionary functions. Barnes v. Zaccari, 669 F.3d 1295, 1303 (11th

Cir. 2012). Plaintiffs assert Officer Buice was at all time employed as a sworn police officer with Clayton County Police Department and was acting within the scope of his employment and "under color of state law." (Doc. 1, ¶ 12). Therefore, there is no dispute that Officer Buice was acting within his discretionary authority for purposes of qualified immunity. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004).

To overcome Officer Buice's qualified immunity, plaintiffs must show he (1) violated Ford's constitutional rights under the Fourth and Fourteenth Amendments, and (2) his conduct was prohibited by clearly established law at the relevant time. Plumhoff v. Rickard, 572 U.S. 765, 774 (2014); Crosby v. Monroe Cnty., 394 F.3d 1328, 1332 (11th Cir. 2004). They cannot do so, as discussed below.

**1. No Constitutional Violation**

"A claim that law-enforcement officers used excessive force to effect a seizure is governed by the Fourth Amendment's 'reasonableness' standard." Plumhoff, 572 U.S. at 774; Graham v. Connor, 490 U.S. 386, 388 (1989). Reasonableness under the Fourth Amendment turns on "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intention or motivation." Graham, 490 U.S. at 397 (citation modified).

In determining whether the force utilized to effect a seizure was "objectively reasonable," courts look at a number of factors, "including the severity of the crime

at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396. The Eleventh Circuit has held that an officer may constitutionally use deadly force when he:

> (1) [H]as probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others or that he has committed a crime involving the infliction or threatened infliction of serious physical harm; (2) reasonably believes that the use of deadly force was necessary to prevent escape; and (3) has given some warning about the possible use of deadly force, if feasible.

McCullough v. Antolini, 559 F.3d 1201, 1206 (11th Cir. 2009); Johnson v. Niehus, 491 F. App'x 945, 952 (11th Cir. 2012); Pace v. Capobianco, 283 F.3d 1275, 1280 n.12 (11th Cir. 2002) ("[T]he threat of danger to be assessed is not just the threat to officers at the moment, but also to the officers and other persons if the chase went on.").

In order to be entitled to qualified immunity, an officer need have only arguable probable cause to believe that the suspect poses a threat of serious physical injury, either to the officer or to others. St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002); Clark v. City of Atlanta, Ga., 544 Fed. App'x 848, 856 (11th Cir. 2013) ("To be entitled to qualified immunity, an officer need only have arguable probable cause to employ deadly force.") (citation modified). The issue "is not whether probable cause existed but whether the officer reasonably believed it

existed, based upon the information he or she possessed at the time of the incident." St. George, 285 F.3d at 1337. Thus, even a "reasonable but mistaken belief that probable cause exists for using deadly force is not actionable under § 1983." Carr v. Tatangelo, 338 F.3d 1259, 1269 (11th Cir. 2003). This standard acknowledges that a police officer rarely will have all of the information before he is compelled to act:

> In making an excessive force inquiry, we are not to view the matter as judges from the comfort and safety of our chambers, fearful of nothing more threatening than the occasional paper cut as we read a cold record accounting of what turned out to be the facts. *We must see the situation through the eyes of the officer on the scene who is hampered by incomplete information and forced to make a split-decision between action and inaction in circumstances where inaction could prove fatal*.

Crosby, 394 F.3d at 1333–34 (emphasis added).

The objective reasonableness analysis assesses the use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" under the totality of circumstances, disregarding intent. Graham, 490 U.S. at 396. "The only perspective that counts is that of a reasonable officer on the scene at the time the events unfolded." Garczynski v. Bradshaw, 573 F.3d 1158, 1166 (11th Cir. 2009); Penley v. Eslinger, 605 F.3d 843, 852 (11th Cir. 2010) (use of force must be analyzed from the perspective of "a reasonable officer possessing the same particularized information as the subject officer"). In addition, the Court must allow "for the fact that police officers are often forced to make split-second judgments --

in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 397.

### *a. Severity Of The Crimes At Issue And Circumstances Leading Up To Officer Buice's Use Of Deadly Force*

Plaintiffs allege that Ford fled from law enforcement to evade arrest, he refused verbal commands to surrender to law enforcement, and that he shot and killed K-9 Waro. (Doc. 1, ¶¶ 16-26). Plaintiffs further allege that dispatch was notified that shots were fired and that several law enforcement agencies responded and that officers on scene were reporting that "Ford shot and killed a police officer, as opposed to a canine." (Id., ¶¶ 25-28). Plaintiffs contend that when Officer Buice and his K-9 Goran later encounter Ford, he was lying on the ground "in the same brush" where he had shot and killed K-9 Waro. (Id., ¶ 29). Plaintiffs allege that Officer Buice gave a verbal command to Ford to show his hands and then fired three shots with one bullet striking the back of Ford's head, killing him. (Id., ¶¶ 30, 31). Plaintiffs concede that Ford was armed with a gun, as he was found lying there "atop" a "'jammed' firearm that was in his hand." (Id., ¶ 32). Plaintiffs do not allege, however, that any of the officers, including Officer Buice, knew that the firearm was jammed. (Id.)

#### ***b. Officer Buice's Use Of Deadly Force Was Objectively Reasonable***

Based on plaintiffs' own allegations, Officer Buice's use of deadly force was objectively reasonable and he gave verbal commands prior to discharging his weapon. Officer Buice had probable cause, or at the very least arguable probable cause, to believe Ford posed a threat of serious physical harm, either to the officer or to others, and therefore, his use of deadly force was objectively reasonable for this reason alone. McCullough, 559 F.3d at 1206. Officer Buice's split-second decision to use deadly force was justified because Ford was armed, Officer Buice had intel that he shot and killed another officer (or K-9), and Ford was fleeing from law enforcement and refusing to surrender, all of which are felonies. McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1246 (11th Cir. 2003) (finding deadly force authorized where the suspect poses "an imminent threat of danger to a police officer or others").

Additionally, Officer Buice had probable cause, or at the very least arguable probable cause, to believe that Ford committed a crime involving the infliction or threatened infliction of serious physical harm based on either Ford shooting and killing K-9 Waro or the report that he had shot and killed a law enforcement officer. For this additional reason, Officer Buice's use of deadly force was objectively reasonable. Id. Although plaintiffs allege Ford's gun was jammed, that does not impact whether Officer Buice's use of deadly force was objectively reasonable.

Plaintiffs do no allege that Buice knew the gun was jammed, and the question is not whether Officer Buice should have had such a belief with the benefit of hindsight; rather, it is "whether the officers' actions are objectively reasonable *in light of the facts and circumstances confronting them*." Graham, 490 U.S. at 397 (citation modified; emphasis added). The fact that Buice knew Ford was armed, had killed either another person or a K-9, and Ford was evading arrest are the facts and circumstances that Officer Buice was confronted with. Waiting until Ford aimed his gun at Officer Buice would have put himself and Officer McKay at extreme risk. Garczynski, 573 F.3d at 1169 ("[A]n officer is not required to wait until an armed and dangerous [suspect] has drawn a bead on the officer or others before using deadly force.").

In that regard, the law is clear that whether Ford's gun that was in his hand was jammed or not has no bearing on whether Officer Buice's shooting was justified. See, e.g., Wilson v. Miller, 650 F. App'x 676, 680 (11th Cir. 2016) ("That we know now that Wilson in fact had no weapon cannot and does not change our conclusion. The reasonableness of force used is not judged with 20/20 vision of hindsight."); Slattery v. Rizzo, 939 F.2d 213, 215 (4th Cir. 1991) (finding that the officer was justified in using deadly force when a suspect in the passenger seat of a stopped car repeatedly lowered his hands toward an object out of the officer's view, in violation of the officer's commands); Thomas v. Baldwin, No. 14-50161, 2014 WL 7235529, at *3

(5th Cir. Dec. 19, 2014) (although no weapon was found, officer observed suspect with something clenched in his hand). Moreover, Officer Buice was not required to wait until the moment Callaway used the gun to act to stop him. Montoute v. Carr, 114 F.3d 181, 185 (11th Cir. 1997) ("[A]n officer is not required to wait until an armed and dangerous felon has drawn a bead on the officer or others before using deadly force.").

This standard acknowledges that a police officer rarely will have all of the information before he is compelled to act:

> In making an excessive force inquiry, we are not to view the matter as judges from the comfort and safety of our chambers, fearful of nothing more threatening than the occasional paper cut as we read a cold record accounting of what turned out to be the facts. **We must see the situation through the eyes of the officer on the scene who is hampered by incomplete information and forced to make a split-second decision between action and inaction in circumstances where inaction could prove fatal.**

Crosby, 394 F.3d at 1333-34 (emphasis added).

Finally, Officer Buice's use of deadly force was justified to stop Ford from fleeing under the circumstances. "[A]n officer may use deadly force to stop a fleeing felony suspect when the officer: (1) has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others or that he has committed a crime involving the infliction or threatened infliction of serious

physical harm; (2) reasonably believes that the use of deadly force was necessary to prevent escape; and (3) has given some warning about the possible use of deadly force, if feasible." Johnson, 491 F. App'x at 952; Pace, 283 F.3d at 1280 n.12 ("[T]he threat of danger to be assessed is not just the threat to officers at the moment, but also to the officers and other persons if the chase went on.").

Here, Officer Buice was justified in using deadly force to prevent the escape of an armed fleeing felon under the rapidly evolving circumstances because he had probable cause, or at the very least arguable probable cause, to believe that Ford posed a threat of serious physical harm to others if he continued to flee. At the time Officer Buice discharged his weapon, Officer Buice believed that Ford was armed, Ford shot and killed another officer (or K-9), which are both felonies, and Ford had committed felony obstruction. See O.C.G.A. § 16-11-107(d); O.C.G.A. § 16-10-24(b). See also O.C.G.A. § 16-5-1 through § 16-5-3.

Officer Buice therefore was justified in using deadly force under the tense, uncertain, and rapidly evolving circumstances to stop an armed fleeing felon. See Johnson, 491 Fed. Appx. at 945 (deputy sheriffs' use of deadly force on fleeing felon was objectively reasonable); Long v. Slaton, 508 F.3d 576 (11th Cir. 2007) (use of deadly force on fleeing felony justified).

Because Officer Buice's use of deadly force was objectively reasonable, he is entitled to qualified immunity. See Wood v. Kesler, 323 F.3d 872, 878 (11th Cir.

2003) ("If no constitutional right [was violated], there is no [need] for further inquiries concerning qualified immunity.").

**2. No Violation Of Clearly Established Law**

Even if this Court finds Officer Buice violated Ford's constitutional rights, qualified immunity still shields him from liability because he did not violate clearly established law. "[T]he purpose of the qualified immunity doctrine is to give meaning to the proposition that government officials are not required to err on the side of caution when it comes to avoiding constitutional violations." Crosby, 394 F.3d at 1334 (citation modified). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). It is plaintiffs' burden to overcome qualified immunity by pointing to specific actions of Officer Buice which violated clearly established law. Montoute v. Carr, 114 F.3d 181, 185–86 (11th Cir. 1997); Crosby, 394 F.3d at 1332.

The Eleventh Circuit has held "many times" that "if case law, in factual terms, has not staked out a bright line, qualified immunity *almost always* protects the defendant." Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 926 (11th Cir. 2000). A "plaintiff cannot rely on general, conclusory allegations or broad legal truisms to show that a right is clearly established." Kelly v. Curtis, 21 F.3d 1544, 1550 (11th Cir. 1994); White v. Pauly, 580 U.S. 73, 79 (2017) (reiterating the longstanding principle that clearly established law should not be defined at a high

level of generality and must be particularized to the facts of the case). For purposes of qualified immunity, only the Supreme Court of the United States, the Eleventh Circuit Court of Appeals, or the Supreme Court of Georgia can establish law. Jenkins v. Talladega City Bd. of Educ., 115 F.3d 821, 826 n.4 (11th Cir. 1997).

Here, there is no controlling precedent particularized to the facts of this case that clearly establishes Officer Buice's conduct violated Ford's rights. Plaintiffs cannot cite any controlling precedent particularized to the facts of this case that clearly establishes that Officer Buice's deadly force to apprehend a fleeing felony suspect who he believed was armed and shot and killed another officer (or K-9) around a residential area constitutes a clear violation of the constitution. Nor would it have been obvious to every objectively reasonable government official confronted with the rapidly evolving circumstances facing Officer Buice that his conduct violated federal law. Because plaintiffs cannot meet their burden of citing case law that would establish that Officer Buice violated clearly established law, he is entitled to qualified immunity.

**B. Official Immunity Bars Plaintiffs' State Claims Against Officer Buice**

"The doctrine of official immunity . . . offers public officers and employees limited protection from suit in their personal capacity." Cameron v. Lang, 274 Ga. 122, 123, 549 S.E.2d 341, 344 (2001). This immunity protects county employees' ability to act upon their judgment and discretion in the performance of their duties.

Id.; Schmidt v. Adams, 211 Ga. App. 156, 156, 438 S.E.2d 659, 660 (1993). Whether a government official is entitled to official immunity is a question of law for the court to decide. Todd v. Brooks, 292 Ga. App. 329, 330, 665 S.E.2d 11, 12 (2008).

The doctrine provides that "while a public officer or employee may be personally liable for his negligent ministerial acts, he may not be held liable for his discretionary acts unless such acts are willful, wanton, or outside the scope of his authority." Gilbert v. Richardson, 264 Ga. 744, 752, 452 S.E.2d 476, 482 (1994); Murphy v. Bajjani, 282 Ga. 197, 198, 647 S.E.2d 54, 56–57 (2007). In other words, "a public officer or employee may be personally liable only for ministerial acts negligently performed or [discretionary] acts performed with malice or an intent to injure." Golden v. Victory, 285 Ga. App. 216, 217, 645 S.E.2d 695, 696 (2007).

**1. Officer Buice's Alleged Conduct Was Discretionary**

"A ministerial act is commonly one that is simple, absolute, and definite," arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." Common Cause/Georgia v. Cty. Of Atlanta, 279 Ga. 480, 482, 614 S.E.2d 761, 764 (2005). "A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." Id.

It cannot be disputed that the claims against Officer Buice involve discretionary functions. See Kidd v. Coates, 271 Ga. 33, 33, 518 S.E.2d 124 (1999) (law enforcement officer exercises discretion in firing a gun at a suspect); Russell v. Barrett, 296 Ga. App. 114, 118, 673 S.E.2d 623, 627 (2009) (finding that using force is discretionary).

**2. No Actual Malice Or Actual Intent To Injure Ford**

Actual malice "requires a deliberate intention to do wrong and denotes express malice or malice in fact." Adams v. Hazelwood, 271 Ga. 414, 414–15, 520 S.E.2d 896, 898 (1999) (citation modified). The Georgia Court of Appeals has held "deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiff." Selvy v. Morrison, 292 Ga. App. 702, 704, 665 S.E.2d 401, 405 (2008).

"In the context of a shooting by a police officer, the Supreme Court of Georgia has held that if the officer shot intentionally and without justification, then [he] acted solely with the tortious actual intent to cause injury and would not be protected by official immunity." Porter v. Massarelli, 303 Ga. App. 91, 96, 692 S.E.2d 722, 726 (2010) (citation modified).

> If, however, the officer shot in self-defense, then [he] had no actual tortious intent to harm . . . , but acted only with the justifiable intent which occurs in every case of self-defense, which is to use such force as is reasonably believed to be necessary to prevent death or great bodily

> injury to themselves or the commission of a forcible felony.

Id. (citation modified).

It is well-settled that "a person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony." O.C.G.A. 16-3-21(a). As for deadly force to apprehend a suspected felon, an officer may use deadly force under O.C.G.A. § 17-4-20 when:

> (1) the officer reasonably believes that the suspect possesses a deadly weapon or any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury; (2) the officer reasonably believes that the suspect poses an immediate threat of physical violence to the officer or others; or (3) there is probable cause to believe that the suspect has committed a crime involving the infliction or threatened infliction of serious physical harm.

Here, for the same reasons discussed in the preceding section, the allegations in the complaint establish that Officer Buice's use of deadly force was justified under O.C.G.A. § 16-3-21(a) to defend himself and/or O.C.G.A. § 17-4-20 to apprehend a suspected felon. Plaintiffs allege that Ford fled from law enforcement to evade arrest, he refused verbal commands to surrender to law enforcement, and that he shot and killed K-9 Waro. (Doc. 1, ¶¶ 16-26). Plaintiffs further allege that dispatch was

notified that shots were fired and that several law enforcement agencies responded and that officers on scene were reporting that "Ford shot and killed a police officer, as opposed to a canine." (Id., ¶¶ 25-28). Plaintiffs contend that when Officer Buice and his K-9 Goran later encounter Ford, he was laying on the ground "in the same brush" where he had shot and killed K-9 Waro. (Id., ¶ 29). Plaintiffs allege that Officer Buice gave a verbal command to Ford to show his hands and then fired three shots with one bullet striking the back of Ford's head, killing him. (Id., ¶¶ 30, 31). Plaintiffs concede that Ford was armed with a gun, as he was found lying there "atop" a gun. (Id., ¶ 32). Based on plaintiffs' own allegations, Officer Buice shot Ford to protect himself and others from being killed or seriously injured. In turn, Officer Buice was justified in his use of deadly force under O.C.G.A. § 16-3-21(a) to prevent death or great bodily injury to himself and those around. Separately, Officer Buice was authorized to use deadly force under O.C.G.A. § 17-4-20 to apprehend Ford, a felony suspect, because he reasonably believed that Ford had a gun, and/or he reasonably believed that Ford posed an immediate threat of physical violence to Officer Buice and others based on either Ford's shooting of a K-9 or reports that he shot and killed an officer.

Therefore, Officer Buice is entitled to official immunity from plaintiffs' state law claims. See, e.g., Williams v. Boehrer, 530 F. App'x 891, 897 (11th Cir. 2013) (reversing denial of official immunity in use of force case where officers "were

justified in their use of force"); Booker v. Anderson, No. 1:18-CV-4297-LMM, 2020 U.S. Dist. LEXIS 261768, at *36-37 (N.D. Ga. Oct. 26, 2020) ("The undisputed evidence reflects that the officers used force that was objectively reasonable to subdue Mr. Donegan, prevent injury to themselves, and effect the arrest. Evidence of malice and intent to injure are absent from the record. On these facts, Defendants are entitled to official immunity under Georgia law.").

**C. Plaintiffs' State Constitutional Claim Is Not A Valid Cause Of Action (Count I)**

Plaintiffs briefly allege violations of the Georgia Constitution against Officer Buice. (Doc. 1, ¶ 54). The Georgia Constitution, however, provides no private cause of action for this claim. The Georgia Court of Appeals has long noted that Georgia law contains "no equivalent to 42 U.S.C. § 1983, which gives a claim against a state officer individually for certain unconstitutional acts." Collins v. Schantz, 369 Ga. App. 282, 286-87 (2023) (reversing denial of summary judgment on claims arising under Georgia Constitution's prohibition on "unreasonable" seizures and "abuse" of a person "in being arrested") (citing Howard v. Miller, 222 Ga. App. 868, 872 (1996); Draper v. Reynolds, 278 Ga. App. 401, 403 (2006)). Based on this authority, there is no viable private cause of action against Officer Buice for his alleged constitutional violations. Id.; Ga. Const. of 1983, Art. I, Sec. I, Para. XIII and XVII; see Hilderbrand v. Lewis, No. 6:19-CV-72, 2022 WL 10662782, at *12 (S.D. Ga. Sept.

2, 2022), report and recommendation adopted, No. 6:19-CV-72, 2022 WL 4463687 (S.D. Ga. Sept. 26, 2022) (holding same); Howard, 222 Ga. App. at 871 (holding same).

## D. Plaintiffs' Wrongful Death Claim Independently Fails (Count III)

### 1. Officer Buice Acted In Self Defense

In addition to his entitlement to official immunity, the state law claims should be dismissed for failure to state a claim because Officer Buice acted in self-defense under O.C.G.A. § 16-3-21(a) and he was statutorily authorized to use deadly force to apprehend a felony suspect under O.C.G.A. § 17-4-20, as discussed above. For this additional reason, he cannot be held liable for any of the state law claims against him. L.T. by Snorton v. Owens, No. 1:17-cv-01036-WMR, 2019 WL 11505837, at *8 (N.D. Ga. Mar. 29, 2019) (finding that the officer's use of deadly force was not excessive based on the imminent threat of bodily harm to himself and accordingly granting summary judgment on the state law battery claim because the "use of deadly force was statutorily justified under O.C.G.A. § 16-3-21(a)"), aff'd, 808 F. App'x 814 (11th Cir. 2020).

### 2. Failure To State A Wrongful Death Claim

Additionally, plaintiffs' wrongful death claim should be dismissed for failure to state a claim because it is premised on allegations of "negligence." (Doc. 1, ¶ 77). As explained by the Eleventh Circuit, "there is no cause of action for the negligent

use of force." Lewis v. City of W. Palm Beach, Fla., 561 F.3d 1288, 1294 (11th Cir. 2009) (affirming dismissal of wrongful death claim premised on alleged negligent use of force for failure to state a claim); Spencer v. City of Orlando, Fla., 725 F. App'x 928, 933 (11th Cir. 2018) (same). "[I]t is inapposite to allege the negligent commission of an intentional tort, such as the use of excessive force." Lewis, 561 F.3d at 1294. Therefore, plaintiff's wrongful death claim should be dismissed for failure to state a claim.

### E. Plaintiffs Are Not Entitled To Punitive Damages And Attorney's Fees

Should the underlying claims against Officer Buice be dismissed, plaintiffs' claims for punitive damages and attorney's fees with respect to these claims should also be dismissed. J. Andrew Lunsford Properties, LLC v. Davis, 257 Ga. App. 720, 722, 572 S.E.2d 682, 685 (2002); OFS Fitel, LLC v. Epstein, Becker & Green, P.C., 549 F.3d 1344, 1357 (11th Cir. 2008).

## III. CONCLUSION

As shown above, plaintiffs' complaint against Officer Buice should be dismissed.

**FREEMAN MATHIS & GARY, LLP**

*/s/ A. Ali Sabzevari*
Jack R. Hancock

Georgia Bar No. 322450
jhancock@fmglaw.com
A. Ali Sabzevari
Georgia Bar No. 941527
asabzevari@fmglaw.com

661 Forest Parkway, Suite E
Forest Park, Georgia 30297
(404) 366-1000 (telephone)
(404) 361-3223 (facsimile)

*Attorneys for defendants Clayton County and Officer Buice*

**CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to Local Rule 7.1(D), that the foregoing memorandum of law has been prepared in accordance with Local Rule 5.1(C) (Times New Roman font, 14 point).

This 3rd day of October, 2025.

**FREEMAN MATHIS & GARY, LLP**

*/s/ A. Ali Sabzevari*
Jack R. Hancock
Georgia Bar No. 322450
jhancock@fmglaw.com
A. Ali Sabzevari
Georgia Bar No. 941527
asabzevari@fmglaw.com

661 Forest Parkway, Suite E
Forest Park, Georgia 30297
(404) 366-1000 (telephone)
(404) 361-3223 (facsimile)

Attorneys for Defendant Stephen D. Buice

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OFFICER STEPHEN D. BUICE'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to all counsel of record.

This 3rd day of October, 2025.

**FREEMAN MATHIS & GARY, LLP**

*/s/ A. Ali Sabzevari*
Jack R. Hancock
Georgia Bar No. 322450
jhancock@fmglaw.com
A. Ali Sabzevari
Georgia Bar No. 941527
asabzevari@fmglaw.com

661 Forest Parkway, Suite E
Forest Park, Georgia 30297
(404) 366-1000 (telephone)
(404) 361-3223 (facsimile)

Attorneys for Defendant Stephen D. Buice