**UNITED STATES DISTRICT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **STEPHON FORD JR. and** ) | |
| **VIRGINIA FORD,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil Action No.** |
| ) | **1:25-cv-04982-JPB** |
| **CLAYTON COUNTY, GEORGIA,** ) | |
| **OFFICER STEPHEN D. BUICE,** ) | |
| **OFFICER BRANDYN MCKAY,** ) | |
| **JOHN DOE 1, and** ) | |
| **JOHN DOE 2,** ) | |
| ) | |
| **Defendants.** ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT OFFICER
STEPHEN D. BUICE'S MOTION TO DISMISS PLAINTIFF' COMPLAINT**

COMES NOW Plaintiffs, Stephon Ford Jr. and Virginia Ford, by and

through their attorney, and hereby file their objection and response in opposition to

Defendant Officer Buice's Motion to Dismiss Plaintiff's Complaint (Doc. 9; 9-1).

Plaintiffs respectfully move this Court to deny Defendant Buice's Motion showing

as follows:

I.      STATEMENT OF RELEVANT FACTS, WITH EMPHASIS

During the early morning hours of the Incident Date, Stephon Ford II

(hereinafter "Ford"), along with two other African-America males, Nikolas Hart

(hereinafter "Hart") and Deiago Smith (hereinafter "Smith"), were approached by Officer T. Bowe and Officer Singh from the Jonesboro Police Department (hereinafter "Jonesboro P.D.") in the parking lot of the Home 1 extended stay motel located at 8240 Tara Boulevard, Jonesboro, Clayton County, Georgia 30236. (Doc. 1, ¶16) During the course of the stop, the officers requested identification from the individuals and received the same. (Doc. 1, ¶17) During the course of the stop, Officer Singh allegedly saw paraphernalia and marijuana inside of a bag which was allegedly in the possession of Ford, conducted a search of the bag, and decided to arrest Ford. (Doc. 1, ¶18) While Officer T. Bowe was attempting to place Ford in handcuffs, Hart allegedly fled on foot from the scene. Officer T. Bowe then allegedly gave chase after Hart, caught Hart, placed Hart in custody, and found a firearm upon a search of Hart's person. (Doc. 1, ¶19)

Ford _allegedly_ fled the scene after Officer T. Bowe gave chase after Hart. (Doc. 1, ¶20, emphasis added) A Jonesboro P.D. police officer requested backup from Clayton County P.D. (Doc. 1, ¶21) Clayton County P.D. canine handler, Sgt. J. Williams, and K-9 Waro arrived at the area of Home 1 to assist. (Doc. 1, ¶22) K-9 Waro allegedly tracked Ford to the wooded area behind the home located at the Incident Location where Ford was _allegedly_ lying in brush. (Doc. 1, ¶23, emphasis added) _Allegedly_ after verbal commands were given by Sgt. J.

Williams for Ford to come out, K-9 Waro was deployed, a single gunshot sounded, and K-9 Waro was stuck with a bullet.  (Doc. 1, ¶24, emphasis added)  Officer T. Bowe *allegedly* alerted dispatch that "shots" were fired and set a perimeter around the Incident Location.  (Doc. 1, ¶25, emphasis added)  K-9 Waro succumbed to its injuries.  (Doc. 1, ¶26)

Several law enforcement agencies were involved in the perimeter and search of Ford around the Incident Location, including, but not limited to, Clayton County P.D., Jonesboro P.D., Fayette County Police Department, Fayetteville Police Department, Forest Park Police Department, Morrow Police Department, and Clayton County Sheriff's Office.  (Doc. 1, ¶27)  Law enforcement officers on scene were giving reports that Ford shot and killed a police officer, as opposed to a canine. (Doc. 1, ¶28)  At some time later several hours later in the morning on the Incident Date, Defendant Buice and Defendant McKay *allegedly* encountered Ford laying on the ground in the same brush behind the Incident Location where K-9 Waro was struck with a bullet.  (Doc. 1, ¶29, emphasis added)

*Allegedly*, a verbal command by Defendant Buice for Ford to show his hands was made immediately prior to three shots being fired.  (Doc. 1, ¶30, emphasis added)  Ford was stuck by at least one bullet to the back of the head, killing him.  (Doc. 1, ¶31)

*Allegedly*, after the three shots were fired, Defendant McKay approached the body of Ford.  It was *allegedly* found that Ford was laying atop a "jammed" firearm that was in his hand.  (Doc. 1, ¶32, emphasis added)  *Under information and belief*, the firearm that was in Ford's hand was "jammed" during his encounter with K-9 Waro earlier in the morning.  (Doc. 1, ¶33, emphasis added)  *Under information and belief*, Ford did not point a firearm at Defendant McKay or Defendant Buice as the "jammed" firearm was under his body.  (Doc. 1, ¶34, emphasis added)  *Under information and belief*, Ford did not make any movements when Defendant McKay and Defendant Buice came upon his person laying in the brush.  (Doc. 1, ¶35, emphasis added)  A resident in the area of the Incident Location reported hearing a gunshot during the morning of the Incident Date other than the one gun involving K-9 Waro and the three gunshots involving Defendant Buice and Defendant McKay.  (Doc. 1, ¶36)

The Clayton County District Attorney's Office investigated this incident. (Doc. 1, ¶37)  Although the Clayton County District Attorney's Office declined to move forward with an indictment against any person, their investigation was not officially closed until some time after May 1, 2025.  (Doc. 1, ¶38, emphasis added)

Plaintiffs are *without evidence* from the many agencies involved in this incident as their Open Record Requests were denied due to the case being open and under investigation.  (Doc. 1, ¶38, emphasis added)

## II.    STANDARD OF REVIEW

For purposes of a motion to dismiss, brought pursuant to Federal Rule of Civil Procedure 12, a complaint's factual allegations are assumed true and construed in the light most favorable to the plaintiff.  See Hardy v. Regions Mortg., Inc., 449 F.3d 1357, 1359 (11th Cir. 2006); M.T.V. v. DeKalb County School Dist., 446 F.3d 1153, 1156 (11th Cir. 2006).  A complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Accordingly, a district court may "insist upon some specificity in [the] pleading before allowing a potentially massive factual controversy to proceed."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 558 (2007) (quotation marks omitted).

"While a complaint attacked by a Rule 12 motion to dismiss does not need detailed factual allegations,…a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  Twombly, 550 at 555; accord Financial Sec.  Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-

83 (11th Cir. 2007) (recognizing that "while notice pleading may not require that the pleader allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim, it is still necessary that a complaint 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory'") (citations omitted).

The court's inquiry at this stage of the proceedings focuses on whether the challenged pleadings "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations and internal quotation marks omitted).

III.    PLAINTIFFS' SECTION 1983 CLAIMS AGAINST DEFENDANT
        BUICE (COUNT 1) ARE NOT BARRED BY QUALIFIED IMMUNITY

Plaintiffs' Section 1983 Claims against Defendant Buice are not barred because Defendant Buice is not entitled to qualified immunity in his individual capacity. The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the right to be free from the use of excessive force in the course of an arrest, or other "seizure." Speight v. Griggs, 1:11-cv-03163-AT *15-16 (N.D. Ga. 2013); see also Graham v. Connor, 490 U.S. 386, 394-95 (1989); Mercado v. City of Orlando, 407 F.3d 1152, 1156-57 (11th Cir. 2005); Oliver v. Fiorino, 586 F.3d 898, 905 (11th Cir. 2009); Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1248 (11th Cir. 2004); Rodriguez v. Farrell, 280 F.3d

1341, 1351 (11th Cir. 2002) (the unreasonable use of excessive force in carrying out an arrest constitutes a violation of the Fourth Amendment).  A claim of excessive force is analyzed through the lens of the Fourth Amendment's "objective reasonableness" standard. Speight, 1:11-cv 03163-AT *16 (N.D. Ga. 2013); citing Graham, 490 U.S. at 395-96 (citing Tennessee v. Garner, 471 U.S. (1985)); McCullough v. Antolini, 559 F.3d 1201, 1205-06 (11th Cir. 2009); Crenshaw v. Lister, 556 F.3d 1283, 1290 (11th Cir. 2009).

Qualified immunity provides protection from government officials sued in their "individual capacities so long as the conduct does not violate clearly established statutory or the constitutional rights of which a reasonable person would have known." See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  To receive qualified immunity, a public official must first show that he was acting "within the scope of his discretionary authority when the allegedly wrongful acts occurred." Courson v. McMillian, 939 F.2d 1479, 1487 (11th Cir. 1991) (quoting Rich v. Dollar, 841 F.2d 11 1558, 1563 (11th Cir.1988).  Plaintiffs concede that Defendant Buice was engaged in a discretionary duty by participating in a police search and subsequently shooting Ford. See Gaillard v. Commins, 562 Fed. Appx. 870, 872-873 (11th Cir. 2014); see also Kenning v. Carli, 648 Fed. Appx. 763, 766-767 (11th Cir. 2016).

Once it is established that a defendant is acting within the scope of his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not warranted under a two-part test. Vinyard v Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002); Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). "As a threshold question, a court must ask, taken in the light most favorable to plaintiff, do the facts alleged show the officer's conduct violated a constitutional right?" Ferraro, 284 F.3d at 1194. This analysis is done using Plaintiff's version of the facts. See Wilkerson v. Seymour, 736 F.3d 974, 979 (11th Cir. 2013) (accepting Plaintiff's "alleged facts, supported by admissible evidence" for purposes of considering whether qualified immunity is warranted at the summary judgment phase). The second part of the test requires Plaintiff to show that the constitutional right was clearly established at the time of the violation. Lee, 284 F.3d at 1194.

Said another way, plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity. Holloman v. Harland, 370 F.3d 1252, 1263 64 (11th Cir. 2004). In order to demonstrate that the official is not entitled to qualified immunity, the plaintiff must show two things: (1) that the defendant has committed a constitutional violation and (2) that the constitutional right the

defendant violated was "clearly established" at the time he did it. Saucier v. Katz, 533 U.S. 194, 201 (2001); Holloman, 370 F.3d at 1264.6

In Fourth Amendment excessive forces cases, "…in order to determine whether the amount of force used by a police officer was proper, a court must ask 'whether a reasonable officer would believe that this level of force is necessary in the situation at hand.'" Speight, 1:11-cv-03163-AT *16 (N.D. Ga. 2013); Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002) (quoting Willingham v. Loughnan, 261 F.3d 1178, 1188 (11th Cir. 2001)); Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002) ("The question is whether the officer's conduct is objectively reasonable in light of the facts confronting the officer."). The reasonableness of a particular use of force must be judged on a case-by-case basis "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396; Long v. Slaton, 508 F.3d 576, 580 (11th Cir. 2007); Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993).

Plaintiffs must show whether the facts alleged show Defendant Buice's conduct violated a constitutional right of Ford. Plaintiffs' claim that Defendant Buice violated Ford's Fourth Amendment right to be free from excessive force when he fatally shot Ford. Perez v. Suszczynski, 809 F.3d 1213, 1218-1219 (11th Cir. 2016); citing Graham v. Connor, 490 U.S. 386, 394–95, 109 S.Ct. 1865, 1870–

71, 104 L.Ed.2d 443 (1989) (holding that the Fourth Amendment's freedom from unreasonable searches and seizures includes the right to be free from excessive force).  An officer may constitutionally use deadly force when the officer: has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others or that he has committed a crime involving the infliction or threatened infliction of serious physical harm; (2) reasonably believes that the use of deadly force was necessary to prevent escape; and (3) has given some warning about the possible use of deadly force, if feasible. Perez 809 F.3d at 1219; Morton v. Kirkwood, 707 F.3d 1276, 1281 (11th Cir. 2013); Vaughan v. Cox, 343 F.3d 1323, 1329–30 (11th Cir. 2003); citing Tennessee v. Garner, 471 U.S. 1, 8 (1985).

In the present case, Officer Buice had no probable cause to believe Ford continued to pose a threat of serious physical harm to the officer or others, had no reasonable belief that the use of deadly force was necessary to prevent escape, and it is not factually known whether warnings about the possible use of deadly force were given.  Defendant Buice's recitation of "facts" and the circumstances amount to a "shoot on sight" stance.  Plaintiffs repeatedly use the term "allegedly" in their Complaint, as emphasized herein, as the truth of the matter is not known to them, only told to them.  Plaintiffs only needed to place Defendant's on notice of their

claims.  Erickson v. Pardus, 551 U.S. 89, 93 (2007)  Plaintiffs are *without evidence* from the many agencies involved in this incident as their Open Record Requests were denied due to the case being open and under investigation.  (Doc. 1, ¶38, emphasis added)  What is known is Ford was not actively fleeing but laying on the ground in brush when he was struck by at least one bullet to the back of the head, killing him.  (Doc. 1, ¶¶29, 31)

Plaintiffs contend that Defendant Buice's actions amounted to a "shoot on sight", which is what he did, and the circumstances at the time of the shooting did not entitle Officer Buice to use deadly force under a probable cause standard, a reasonable belief standard, objectively reasonable standard, or any other standard. "The mere possession of a firearm by a suspect is not enough to permit the use of deadly force."  Cooper v. Sheehan, 735 F.3d 153, 159 (4th Cir. 2013).  "[A]n officer does not possess the unfettered authority to shoot a member of the public simply because that person is carrying a weapon." Id.  "Instead, deadly force may only be used by a police officer when, based on a reasonable assessment, the officer or another person is threatened with the weapon." Id.  It is true that the only perspective that counts is that of a reasonable officer on the scene at the time the events unfolded (Garczynski v. Bradshaw, 573 F.3d 1158, 1166 (11th Cir. 2009), but we do not know Defendant Buice's perspective at this stage of the case and

especially without Open Records evidence or Discovery.  Defendant offers no

bodycam video, audio, or any other exhibits with its Motion to Dismiss that

contradict the position.  Rather, Defendant Buice desires for the Court to assume

this position at the onset of the case.  Whether the Court takes a different position

after Discovery and a Motion for Summary Judgment is a different matter.  But

currently, the facts, in favor of Plaintiff, show Defendant Buice's conduct violated

Ford's Fourth Amendment constitutional right and shows that the constitutional

right was clearly established at the time of the violation, thereby denying his use of

qualified immunity.

Plaintiffs must demonstrate that the constitutional right was clearly

established at the time of the violation. "A constitutional right is 'clearly

established' when the 'contours of the right [are]sufficiently clear [such] that a

reasonable officer would understand that what he is doing violates that right.'"

Shepard v. Davis, 300 F. App'x 832, 839 (11th Cir. 2008) (quoting Anderson v.

Creighton, 483 U.S. 635, 640 (1987)).  The Eleventh Circuit has abrogated its prior

holding that a right is only clearly established when there is "a case 'on all' fours,'

with materially identical facts." Id.; Holloman ex rel. Holloman v. Hariand, 370

F.3d 1252, 1277 (11th Cir. 2004).  Instead, courts must now "assess whether the

facts of the instant case fall within "statements of general principle from our

precedents." Id. at 1278. (emphasis supplied).  Thus, "[t]o avoid having his suit barred by qualified immunity, [P]laintiff[s] need not show that [Defendant's] conduct specifically has been held unlawful, but rather that 'in the light of pre-existing law the unlawfulness [was] apparent.'" Shepard v. Davis, 300 Fed. Appx. 832, 839 (11th Cir. 2008) (quoting Creighton, 483 U. S. at 640).  "[T]he salient question ... is whether the state of the law [at the time of the events in question] gave [Defendant] fair warning that his alleged treatment of [a claimant] was unconstitutional." Holloman, 370 F.3d at 1278 (quoting Hope v. Pelzer, 536 U. S. 730, 741 (2002)).

In the Eleventh Circuit, "decisions of the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state can clearly establish the law." Shepard, 300 Fed. Appx. 832 (quotation marks and quotation omitted; emphasis added).  With regard to this inquiry, the Supreme Court in Hope v. Pelzer, 536 U.S. 730, 741 (2002) cautioned that courts should not be unduly rigid in requiring factual similarity between prior cases and the case under consideration.  The "salient question," the Court said, is whether the state of the law gave the defendants "fair warning" that their alleged conduct was unconstitutional.  Hope, 536 U.S. at 741. In Perez v. Susczynski, 809 F.3d 1213 (11th Cir. 2016), the Eleventh Circuit Court of Appeals held that the

officer was not entitled to qualified immunity for fatally shooting suspect twice in the back, after suspect complied with order to lay on the ground with his hands behind his back.  The Court held that officer violated suspect's Fourth Amendment right to be free from excessive force. Id. at 1218.  Defendants' brief (Doc. 9-1, p. 13-14) is off base.  Defendants appear to be making arguments related to summary judgment.  There are repeated arguments that Plaintiffs "cannot meet their burden of citing case law that would establish that Officer Buice violated clearly established law…." Id.  In Perez, accepting Plaintiff's version of facts as true, alleged that Deputies were called to respond to an altercation between two women at a sports bar.  Ten to twenty people were in the parking lot when the deputies arrived.  One of these people was plaintiff, who was at the rear of a pickup truck. Defendant told everyone to get down and put their hands in the air.  Plaintiff got on the ground.  Plaintiff made no attempt to get up or resist.  A deputy remarked that plaintiff had a gun.  One of the deputies removed a handgun from plaintiff's waistband and threw it "pretty far," about ten feet.  Defendant then shot Plaintiff twice in the back, in a manner one witness described as "execution-style," from approximately twelve to eighteen inches away. Id. at 1218.  The Court held that defendant officer did not meet any of the Graham or Morton factors, and it was clear that defendant violated plaintiff's Fourth Amendment rights.  The present

case is factually similar to Perez.   In fact, the present facts are more egregious.

Ford was already on the ground and was shot in the back of the head (akin to

"execution-style").  This case alone "clearly establishes" that the actions of Office

Buice by shooting Ford in the back of the head while he was already on the ground

was not objectively reasonable, thus he is not entitled to qualified immunity.  See

also Brown v. Nocco, 788 Fed. Appx. 669 (11th Cir. 2019)   As such Defendant

Buice had fair warning that his shooting of Ford was unconstitutional and clearly

violated Ford's constitutional rights under the Fourth Amendment. A reasonable

officer would understand that what Defendant Buice did violated Ford's clearly

established constitutional rights.  As such, Plaintiffs have met their burden that the

law was clearly established at the time of the violation, and Defendant is not

entitled to qualified immunity as a matter of law.

IV.   PLAINTIFFS' WRONGFUL DEATH CLAIM DOES NOT FAIL

Official immunity under Georgia law "offers limited protection from suit to

governmental officers and employees." Speight v. Griggs, 1:11-cv-03163 *42-43

(N.D. Ga. 2013); citing Gilbert v. Richardson, 264 Ga. 744, 746 (1994) (citing

Cooper v. Swofford, 258 Ga. 143 (1988)); Martin v. Ga. Dept. of Pub. Safety, 257

Ga. 300 (1987), cert. denied, 484 U.S. 998 (1988)).  Under the doctrine of official

immunity, a public official is not liable for his negligent performance of a

discretionary act within the scope of his authority; however, he may be personally liable if he negligently performs a ministerial act or acts with actual malice or intent to injure while performing a discretionary act. Cameron v. Lang, 274 Ga. 122, 124 (2001).  The determination of whether an official function is discretionary or ministerial is a matter of law for the court.  See Daley v. Clark, 282 Ga. App. 235, 245 (2006); Greenway v. Northside Hosp., Inc., 317 Ga. App. 371, 378 (2012).  However, where the relevant facts pertaining to immunity are in dispute, the trial court is without authority to resolve those factual issues on a motion for summary judgment.  A jury must resolve the factual issues, after which the trial court "determine[s] whether the employee's acts were discretionary or ministerial and, thus, whether the employee is entitled to official immunity.  Glass v. Gates, 311 Ga. App. 563, 575(2) (2011) (quoting Nichols v. Prather, 286 Ga. App. 889, 896(4) (2007).  "The determination of whether an action is discretionary or ministerial depends on the character of the specific actions complained of, not the general nature of the job, and is to be made on a case-by-case basis." Greenway, 317 Ga. App. at 378 (internal citation and punctuation omitted); Vann v. Finley, 313 Ga. App. 153, 159 (2011).  The Georgia Supreme Court has held that generally a law enforcement officer exercises discretion in responding to an emergency call, engaging in high-speed chases, executing a search warrant, and

firing a gun at a suspect.  Cameron v. Lang, 274 Ga. at 125 (2001) (high speed car chase); Gilbert v. Richardson, 264 Ga. at 753 (1994) (emergency call); Kidd v. Coates, 518 Ga. 33, 33 (1999) (plaintiff conceded that officers' acts in executing warrant and firing guns were discretionary).  In police shooting cases, the Supreme Court of Georgia has held that if the officer shot intentionally and without justification, then he acted solely with the tortious actual intent to cause injury and would not be protected by official immunity.  Porter v. Massarelli, 303 Ga. App. 91, 96 (2010) (quoting Kidd v. Coates, 271 Ga. 33, 34 (1999)).  In Dekalb County v. Bailey, 319 Ga. App. 278, 282 (2012), the Georgia Court of appeals held that genuine issues of material fact existed as to whether police officer was justified in fatally shooting individual who was running away from him, precluding summary judgment for officer on official-immunity grounds with respect to state-law claims including assault and battery and wrongful death arising from the incident.  In Bailey, Defendant received a 911 call reporting a stolen motor vehicle from an apartment complex. Id. at 279-80.  Apartment residents directed defendants to apartments 38 and 40. Id.  As defendants knocked, they noticed someone looking through the blinds of a window in apartment 40.  Id. Decedent pointed at officers with an object in his hand.  Id.  Defendants ordered decedent to stop and drop the object.  Id.  Decedent began running down the staircase and jumped toward

officers who fired at decedent four times.  Id.  Decedent ran away from officers towards a wooded area adjacent to the apartment complex.  Id.  Defendant testified that he was fearful both for his life and for the lives of the residents of the apartment complex.  Id.  Decedent's body was found later with numerous gunshot wounds.  Id.  The court held that an officer who, in the performance of his official duties, shoots another in self-defense is shielded from tort liability by the doctrine of official immunity.  One who acts in self-defense does not act with the tortious intent to harm another, but does so for the non-tortious purpose of defending himself.  O.C.G.A. § 51–11–1.  Thus, if [the officer] shot [the decedent] intentionally and without justification, then [the officer] acted solely with the tortious "actual intent to cause injury."  See Gardner v. Rogers, 224 Ga. App. 165, 169(4) (1996).  The Court concluded that genuine issues of material fact existed as to whether police officer was justified in fatally shooting individual who was running away from him, precluding summary judgment for officer on official-immunity grounds with respect to state-law claims including assault and battery and wrongful death.  Bailey, 319 Ga. App. at 382.  The same is true in the present case, taking Plaintiffs' version of facts as true, Defendant Buice intentionally and without justification shot Ford in the back of the head causing his death.  Again, the court's inquiry at this stage of the proceedings focuses on whether the

challenged pleadings "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007).  As such, Defendant Buice is on notice of the wrongful death claim.

V.    <u>CONCLUSION</u>

For each of the foregoing reasons, Plaintiffs respectfully request that the Court DENY Defendant Buice's Motion to Dismiss and allow the case to proceed, including Discovery.

This the 11th day of November, 2025.

Respectfully submitted,
**/s/ Frank T. Smith, Esq.**
Frank T. Smith, Esq.
Georgia Bar No. 657505
Attorney for Plaintiffs
The Smith Legal Group, LLC
970 Milstead Avenue N.E.
Conyers, Georgia 30012-4526
Telephone (678) 323-8114
Facsimile (678) 825-8878
frank@ftsmithlaw.com
