UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

STEPHON FORD JR., et al.,

      Plaintiffs,

    v.

CLAYTON COUNTY GEORGIA, et al.,

      Defendants.

CIVIL ACTION NO.
1:25-CV-04982-JPB

## **ORDER**

This matter is before the Court on two motions to dismiss [Doc. 9]; [Doc. 17].  This Court finds as follows:

### **BACKGROUND**

This case arises from the death of Stephon Ford III ("Decedent"), who was fatally shot by Officers Stephen D. Buice and Brandyn McKay (collectively, "the Officers") of the Clayton County Police Department.  On September 2, 2025, Decedent's parents, Stephon Ford Jr. and Virginia Ford (collectively, "Plaintiffs"), filed suit against Clayton County and the Officers (collectively, "Defendants") and asserted the following causes of action:  (1) excessive force in violation of the Fourth and Fourteenth Amendments; (2) failure to train in violation of 42 U.S.C. §

1983; and (3) wrongful death in violation of Georgia law.  [Doc. 1].  Plaintiffs alleged the following facts in their Complaint:

On the morning of September 2, 2023, police officers from the Jonesboro Police Department encountered Decedent, who was seventeen years old, in the parking lot of an extended stay motel.  Id. at 3, 6.  Because the officers noticed that Decedent had drug paraphernalia and marijuana, they decided to arrest him.  Id. at 6.  Decedent, however, fled the scene, and the Jonesboro Police Department requested backup from the Clayton County Police Department.  Id. at 6–7.

A Clayton County police officer and Waro, the officer's K-9, arrived at the extended stay motel to assist.  Id.  According to the Complaint, Waro tracked Decedent into a wooded area where Decedent was lying in brush.  Id.  Decedent ignored commands to come out from where he was hiding, and as a result, Waro was deployed.  Id.  Soon thereafter, "a single gunshot sounded," and Waro was struck with a bullet and died.[1]  Id. at 8.

After Waro was killed, other law enforcement agencies arrived on scene, including the Fayette County Police Department, the Fayetteville Police Department, the Forest Park Police Department, the Morrow Police Department

---

[1] The Complaint does not come right out and say that Decedent shot and killed Waro.

and the Clayton County Sheriff's Office.  Id.  Plaintiffs assert that these officers were told that Decedent shot and killed a police officer.  Id.

Several hours later,[2] the Officers found Decedent "laying on the ground in the same brush" where Waro was shot.  Id.  According to Plaintiffs, Officer Buice told Decedent to "show his hands" and then "immediately" fired three shots.  Id. at 9.  Decedent, who was shot in the back of the head, died.  Id.  When Decedent died, he "was laying atop a 'jammed' firearm that was in his hand."  Id.  Although Decedent was found on top of a gun, Plaintiffs alleged that Decedent never pointed the firearm at the Officers, nor did he make any movements when the Officers found him in the brush.  Id. at 10.

Plaintiffs filed this action on September 2, 2025.  On October 3, 2025, Officer Buice filed a Motion to Dismiss.  [Doc. 9].  Clayton County and Officer McKay filed their Motion to Dismiss on October 29, 2025.  [Doc. 17].  The motions are now ripe for review.

## LEGAL STANDARD

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff."  Traylor v. P'ship

---

[2] It is unclear how many hours passed.  The Complaint merely alleges that the shooting occurred "[a]t some time later several hours later in the morning."  [Doc. 1, p. 9].

Title Co., 491 F. App'x 988, 989 (11th Cir. 2012).  Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although detailed factual allegations are not necessarily required, the pleading must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A complaint is insufficient if it only tenders naked assertions devoid of further factual enhancement. Id.  Importantly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (citation omitted). At bottom, the complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," id., and must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Traylor, 491 F. App'x at 990 (quoting Iqbal, 556 U.S. at 678).  While all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, a court need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations.  Iqbal, 556 U.S. at 678.

## DISCUSSION

Defendants assert that Plaintiffs' Complaint is subject to dismissal. Specifically, Defendants contend that the Officers are entitled to qualified immunity on the excessive force claim and official immunity on the wrongful death claim.[3]  As to the Monell claim, Defendants argue that Plaintiffs have failed to allege sufficient facts to establish municipal liability against Clayton County.

## I.    Claims Against the Officers

Plaintiffs bring two claims against the Officers—excessive force in violation of 42 U.S.C. § 1983 and wrongful death in violation of Georgia law.  The Court discusses the excessive force claim first.

### a.  Excessive Force Claim

Defendants assert that the Officers are entitled to qualified immunity as to the excessive force claim.  The defense of qualified immunity is ordinarily addressed at the summary judgment stage of a case. Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001).  Nevertheless, the Eleventh Circuit Court of Appeals has held that it may be raised and considered earlier.  St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002).  In fact, because qualified immunity

---

[3] They additionally argue that Plaintiffs' claim under the Georgia Constitution is not a valid cause of action.  The Court is not convinced that Plaintiffs brought any claim under the Georgia Constitution, and therefore this argument will not be addressed further.

5

is a "'defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible.'" Paez v. Mulvey, 915 F.3d 1276, 1284 (11th Cir. 2019) (quoting Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002)).

As a general principle, "[q]ualified immunity protects public officers 'from undue interference with their duties and from potentially disabling threats of liability.'" Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 806 (1982)). Specifically, qualified immunity shields "'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Corbitt v. Vickers, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting Harlow, 457 U.S. at 818). Crucially, qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law.'" Id. (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

"[T]o establish qualified immunity, a defendant must first show that [he] was acting within the scope of [his] discretionary authority at the time of the alleged misconduct."[4] Paez, 915 F.3d at 1284. Once a defendant makes the required showing, "the burden shifts to the plaintiff to show that qualified

---

[4] In this case, it is undisputed that the Officers were acting within the scope of their discretionary authority.

immunity is not appropriate." Id.  Under the plaintiff's burden, the plaintiff must show that:  (1) the defendant violated a constitutional right; and (2) the violated right was clearly established at the time of the incident.  Id.  "'Both elements of this test must be present for an official to lose qualified immunity.'"  Rivera v. Carvajal, 777 F. App'x 434, 437 (11th Cir. 2019) (quoting Brown v. City of Huntsville, 608 F.3d 724, 734 (11th Cir. 2010)).

In the analysis below, the Court will first analyze whether the Officers violated Decedent's constitutional rights.

### i.    Constitutional Violation

Plaintiffs contend that the Officers violated Decedent's Fourth Amendment right to be free from excessive force.  "Any claim that a law enforcement officer used excessive force—whether deadly or not—during a seizure of a free citizen must be analyzed under the Fourth Amendment's 'reasonableness' standard."  Garczynski v. Bradshaw, 573 F.3d 1158, 1166 (11th Cir. 2009) (per curiam) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)).   Under this rule, a court must ask whether the force used was "'objectively reasonable in light of the facts confronting the officer.'"  Brown v. Nocco, 788 F. App'x 669, 674 (11th Cir. 2019) (quoting Mobley v. Palm Beach Cnty. Sherriff Dep't, 783 F.3d 1347, 1353 (11th Cir. 2015)).  This determination is made "from the perspective of a

reasonable officer on the scene" and not "with the 20/20 vision of hindsight." Mobley, 783 F.3d at 1353.  Significantly, the Supreme Court of the United States has recognized that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving— about the amount of force that is necessary in a particular situation."  Graham, 490 U.S. at 397.

Whether an officer's use of force is reasonable depends "on a number of factors."  Cantu v. City of Dothan, 974 F.3d 1217, 1229 (11th Cir. 2020).  These factors include "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight."  Graham, 490 U.S. at 396.  In cases involving deadly force, courts should also consider whether the officer:

> (1) ha[d] probable cause to believe that the suspect pose[d] a threat of serious physical harm, either to the officer or to others or that he ha[d] committed a crime involving the infliction or threatened infliction of serious physical harm; (2) reasonably believe[d] that the use of deadly force was necessary to prevent escape; *and* (3) ha[d] given some warning about the possible use of deadly force, if feasible.

Perez v. Suszczynski, 809 F.3d 1213, 1218–19 (11th Cir. 2016) (quoting Morton v. Kirkwood, 707 F.3d 1276, 1281 (11th Cir. 2013)).  It is well settled that "[t]hese

8

are not 'rigid preconditions' for the lawful application of deadly force, but rather factors" that courts should consider.  Wright v. Warren, No. 23-13930, 2025 WL 1409296, at *4 (11th Cir. May 15, 2025).  As explained by the Eleventh Circuit, "[n]ot all of the factors are relevant to all excessive force cases."  Cantu, 974 F.3d at 1229.  In fact, the Eleventh Circuit has held that in a typical case, "it is sufficient that the officer reasonably believed that the suspect posed a threat to the safety of the officer or others."  Id.; see Shaw v. City of Selma, 884 F.3d 1093–98 (11th Cir. 2018) (determining that qualified immunity was appropriate for an officer who shot a mentally ill man who was holding a hatchet and advancing on the officer even though the man had not committed a crime, was not attempting to escape and was not aggressively resisting arrest).  Below, the Court considers the relevant factors.

Two of the above factors weigh in favor of granting qualified immunity— the severity of the crime at issue and whether probable cause existed to believe that Decedent had committed a crime involving serious bodily harm.  These factors weigh in favor of the Officers because the Complaint alleged that Decedent had killed a police K-9 officer several hours before the shooting.  The Complaint also stated that all the law enforcement officers on scene were told that Decedent had killed a police officer.  In the Court's view, these facts demonstrate that the

9

Officers had probable cause to believe that Decedent had committed a serious and violent offense involving the infliction of significant harm. Thus, these factors weigh in favor of the reasonableness of deadly force and a finding of qualified immunity.

The remaining considerations, however, weigh in the opposite direction: whether Decedent was actively resisting or attempting to evade, whether the Officers reasonably believed that deadly force was necessary to prevent escape, whether the Officers had given some warning about the possible use of deadly force and whether there was an immediate threat to the safety of the Officers. As to whether Decedent was actively resisting or attempting to evade and whether the Officers reasonably believed that deadly force was necessary to prevent escape, this Court acknowledges that Decedent had previously resisted other law enforcement officers and had successfully evaded capture for a period of hours. At the time of the shooting, however, Decedent was not resisting and not evading. Indeed, Plaintiffs' alleged that Decedent was lying on the ground and not moving. These facts, at least when construed in the light most favorable to Plaintiffs, suggest that Decedent was not attempting to evade or escape at the time. Since Decedent was not moving, it does not seem reasonable that deadly force would be

necessary to prevent an escape.  These factors thus weigh against a finding of qualified immunity.

The Court must also consider whether the Officers gave a warning about the possible use of deadly force before shooting Decedent.  The Complaint provided that the Officers instructed Decedent to show his hands.  This is not a warning, however, about deadly force.  Even if it was a proper warning, it is not clear that Decedent had sufficient time to comply with the command or that he failed to comply with the command before being shot.  In fact, the Complaint stated that Officer Buice told Decedent to show his hands "immediately prior" to firing three shots.  [Doc. 1, p. 9].  Importantly, the Complaint specifically alleged that it was feasible for the Officers to give Decedent some warning about the possible use of deadly force and that the warning given was "not proper."  Id. at 13.  Under these facts, the Court finds that this factor weighs against a finding of qualified immunity.

The final factor that the Court must consider is whether there was an immediate threat to the safety of the Officers or others.  In determining whether an officer had probable cause to believe that the suspect posed a threat of serious physical harm to the officer or others, a court must look to the "level and immediacy" of the threat.  Powell v. Snook, 25 F.4th 912, 922 (11th Cir. 2022)

(citation omitted) (noting that "the law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect").  This factor essentially asks a court to determine "whether, given the circumstances, the suspect would have appeared to reasonable police officers to have been gravely dangerous."  Penley v. Eslinger, 605 F.3d 843, 851 (11th Cir. 2010) (alteration omitted).  Defendants contend that Decedent would have appeared to have been gravely dangerous because the Officers knew that he was armed, had previously shot and killed a K-9 officer and was refusing to surrender.  The Court disagrees with Defendants' view of Plaintiffs' allegations.  When construing the allegations in the light most favorable to Plaintiffs, the Court cannot find, at this stage of the proceedings, that Decedent appeared to have been gravely dangerous at the time of the shooting because the Complaint alleged that Decedent was lying face down when encountered by the Officers, never pointed the firearm at the Officers and did not make any movements whatsoever.  Because the Complaint plausibly demonstrated that Decedent was prone and stationary before being shot three times in the back, the Court finds that this factor weighs against a finding of qualified immunity.

In sum, after considering the relevant factors and accepting Plaintiffs' allegations as true, this Court concludes that Plaintiffs have plausibly alleged that

the Officers' use of force was objectively unreasonable and therefore violated the Fourth Amendment.  Accordingly, the Court finds that Plaintiffs have satisfied their burden as to the first element of the qualified immunity analysis.

### ii.    Clearly Established Law

For the second element, a plaintiff must show that the defendant violated a statutory or constitutional right that was clearly established when the violation occurred.  "A right is 'clearly established' if it would have been apparent to every reasonable officer in [the Officers'] position that [their] use of force was unlawful." Perez, 809 F. 3d at 1221–22.  The Eleventh Circuit has identified three ways in which a plaintiff can show that the right was clearly established:

> (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1291–92 (11th Cir. 2009) (citations omitted).  Regardless of which method a plaintiff uses to show that the right was clearly established, "[t]he 'salient question' is whether the state of the law at the time of the incident gave [the officer] 'fair warning' that his conduct was unlawful." Perez, 809 F.3d at 1222.

13

Plaintiffs do not argue that a broad statement or principle clearly establishes a constitutional right or that the Officers' conduct was so egregious that a constitutional right was clearly violated.  Instead, Plaintiffs cite to Perez, an Eleventh Circuit case, for the proposition that the Officers violated a clearly established right.[5]  809 F.3d at 1213.  Perez involved the fatal shooting of Victor Arango by a police officer.  Id. at 1216.  In Perez, police officers were responding to an altercation between two women at a sports bar.  Id. at 1217.  When the officers arrived on scene, they encountered ten to twenty bystanders in the parking lot.  Id.  The officers immediately ordered the bystanders to get down on the ground and put their hands in the air.  Id.  Arango, a bystander, went to the ground and made no attempt to get up or resist police.  Id.  In fact, Arango was "compliant and prostrate on his stomach, with his hands behind his back."  Id.  While Arango was on the ground, one of the police officers remarked that Arango had a gun in his waistband.  Id.  Another officer then removed the gun from Arango and threw it about ten feet away.  Id.  Even though the gun had been removed from Arango, an officer shot Arango twice in the back, "execution-style."  Id.

---

[5] Plaintiffs cite to another case as well, but it is unpublished.  Under Eleventh Circuit law, unpublished cases do not serve as binding precedent and cannot be relied upon to define clearly established law.  Bayse v. Ward, 147 F.4th 1304, 1313 (11th Cir. 2025).

Under these facts, the Eleventh Circuit determined that "no reasonable officer would have shot Arango while he was lying prone, unarmed, and compliant." Id. at 1218. The court observed that no evidence existed that Arango had committed any crime or was a threat. Id. at 1219. The court also recognized that there was no indication that Arango actively resisted or attempted to flee. Id. Finally, the court emphasized that the police officer gave no warning before using deadly force. Id. As to the fact that Arango had a weapon, the Eleventh Circuit held that

> the mere presence of a gun or other weapon is not enough to warrant the exercise of deadly force and shield an officer from suit. Where the weapon was, what type of weapon it was, and what was happening with the weapon are all inquiries crucial to the reasonableness determination.

Id. at 1220.

Defendants assert that Perez is not sufficient to put the Officers on notice of the state of the law. In Defendants' view, Plaintiffs must show that another case exists where the court found that deadly force was unconstitutional when it was used to "apprehend a fleeing felony suspect who [the Officers] believed was armed and shot and killed another officer (or K-9) around a residential area." [Doc. 9-1, p. 14].

15

The Court disagrees with Defendants' characterization of the issue. When construing the allegations in the light most favorable to Plaintiffs, the relevant inquiry is not whether existing precedent addresses if deadly force can be used against a fleeing armed suspect who had previously committed a violent offense. Instead, the question is whether clearly established law prohibited the use of deadly force against a suspect who, although known to be armed, was lying face down on the ground, not moving, not actively threatening officers and not afforded a meaningful opportunity to comply with commands before being shot.

The Court acknowledges that Perez, the case cited by Plaintiffs, is not completely analogous to the facts alleged in Plaintiffs' Complaint. Indeed, there is no indication that Arango had committed a crime, much less a violent one, nor is there any suggestion that he had previously fled police officers. While these distinctions are significant, they do not end the inquiry. Here, the Complaint suggested that hours elapsed between the time Decedent shot the K-9 officer and when he was shot by the Officers. The Complaint also alleged that Decedent was shot, without warning, while lying motionless in the brush. Importantly, significant similarities exist between the alleged facts in this case and Perez. As in Perez, the Officers allegedly provided no warning before using deadly force. Also like Perez, at the time that the deadly force was used, the suspect was allegedly

16

lying prone on the ground.  Given this authority, the Court concludes that, as of September 2, 2023, the law was clearly established that an officer may not use deadly force against a suspect who is lying prone, motionless, not resisting, not attempting to flee and not posing an immediate threat, even if the suspect is armed. See Perez, 809 F.3d at 1218 (holding that "no reasonable officer would have shot [the victim] while he was lying prone . . . and compliant"); see also Salvato v. Miley, 790 F.3d 1286, 1294 (11th Cir. 2015) (finding that the officer's use of deadly force was unreasonable even where the suspect had previously resisted officers and engaged in violent conduct).

In sum, the Court recognizes that the clearly established law standard imposes a demanding burden.  Nevertheless, Plaintiffs have met that burden at this stage, especially because in the Eleventh Circuit, "exact factual identity with a previously decided case is not required, but rather, the key inquiry is whether the law provided the official with fair warning that his conduct violated the [C]onstitution." Young v. Brady, 793 F. App'x 905, 908 (11th Cir. 2019 ) (citation modified).  At the very least, Perez provided a fair warning that an officer is not authorized to shoot a prone and non-threatening individual without warning. Accordingly, Plaintiffs have satisfied their burden to show that the right was clearly established.

***

The Court is satisfied that Plaintiffs sufficiently alleged that the Officers violated a constitutional right and that the right was clearly established. Thus, to the extent that Defendants argue that the Officers are entitled to qualified immunity, the motions are **DENIED**.

### b. Wrongful Death Claim

In addition to the excessive force claim, Plaintiffs also brought a state law claim against the Officers for wrongful death. Essentially, Plaintiffs alleged that the Officers were not legally justified in killing Decedent and that Decedent's death resulted from "the crime, criminal negligence, or other negligence" of the Officers. [Doc. 1, p. 19]. Defendants contend that this claim should be dismissed because the Officers are entitled to official immunity.[6]

Georgia's doctrine of official immunity applies to claims brought against public officers and employees in their individual capacities. Mommies Props., LLC v. Semanson, 880 S.E.2d 376, 383 (Ga. Ct. App. 2022). Although immunity

---

[6] Defendants also argue that the wrongful death claim should be dismissed because it is premised on allegations of negligence. In Plaintiffs' Complaint, Plaintiffs alleged more than negligence. Indeed, Plaintiffs defined homicide in the Complaint and stated that Defendants are liable to Plaintiffs for the wrongful death of Decedent which resulted from the crime. To the extent that Defendants argue that the claim should be dismissed because it is *only* based on negligence, the motions are **DENIED**. However, to the extent that the wrongful death claim is premised on negligence, the motions are **GRANTED**.

protects many public officers, the Georgia Constitution provides that public officers "may be liable for injuries and damages if they act[ed] with actual malice or with actual intent to cause injury in the performance of their official functions." Ga. Const., art. I, § 2.  Consequently, a public officer loses the protection of official immunity if the officer acted with "actual malice or intent to injure." Cameron v. Lang, 549 S.E.2d 341, 345 (Ga. 2001).

Actual malice is a "demanding standard." Black v. Wigington, 811 F.3d 1259, 1266 (11th Cir. 2016).  Indeed, "[a]ctual malice" means a deliberate intention to do a wrongful act or do harm, which is more than simply reckless disregard for the rights or safety of others. Mommies Props., 880 S.E.2d at 384. In short, the mere fact that a police officer's decision-making was "misguided" or even "reckless" is not enough to support a finding of actual malice. Black, 811 F.3d at 1266.

On the other hand, "[i]ntent to cause injury" means the "actual intent to cause harm . . . not merely an intent to do the act purportedly resulting in the claimed injury." Marshall v. Browning, 712 S.E.2d 71, 74 (Ga. Ct. App. 2011). The Supreme Court of Georgia has held that "[u]nder this definition, an officer who, in the performance of his official duties, shoots another in self-defense is shielded from tort liability by the doctrine of official immunity." Kidd v. Coates,

19

518 S.E.2d 124, 125 (Ga. 1999). Self-defense is "such force as is reasonably believed to be necessary to prevent death or great bodily injury to themselves or the commission of a forcible felony." Porter v. Massarelli, 692 S.E.2d 722, 726 (Ga. Ct. App. 2010). If, however, an officer shoots a suspect "intentionally and without justification," then the officer is considered to have acted solely with "intent to cause injury" and therefore can be sued for damages. Kidd, 518 S.E.2d at 125.

Here, as previously discussed, Plaintiffs have alleged that the Officers shot Decedent hours after he first encountered law enforcement officers and while he was lying face down on the ground. Plaintiffs further asserted that Decedent never moved or pointed any weapon at the Officers before they shot him three times in the back without warning. In the Court's view, these facts raise a question of fact as to whether the Officers were justified in using deadly force against Decedent and whether the Officers reasonably believed that force was necessary to prevent death or great bodily harm. See Porter, 692 S.E.2d at 726 (holding that a jury question existed as to whether an officer shot a suspect in self-defense because the suspect's testimony disputed the evidence that the officer acted with justification by raising a "factual question concerning whether [the officer] discharged his gun before or after the [suspect's] car began to move"). Ultimately, as discussed in

connection with the federal claim, Plaintiffs may be able to show that the Officers lacked any justification to fire their weapons in self-defense.  See Smith v. LePage, 834 F.3d 1285, 1298 (11th Cir. 2016) (explaining that the "same dispute of facts that prevents summary judgment on the plaintiffs' § 1983 claim related to the shooting also prevents summary judgment on their parallel state-law claim"). And under Georgia law, if an officer shoots without such a justification, official immunity does not shield him from suit.  For these reasons, to the extent that Defendants assert that the Officers are entitled to official immunity as to the wrongful death claim, the motion is **DENIED**.

## II.   Monell Claim

Plaintiffs asserted a Monell claim against Clayton County.  In their Motion to Dismiss, Defendants argue, among other things, that Plaintiffs failed to allege sufficient facts to establish liability under Monell.  In response, Plaintiffs concede that their pleading is deficient and state that they only want to pursue claims against Officers Buice and McKay in their individual capacities.  [Doc. 28, pp. 16–17].  Accordingly, to the extent that Defendants argue that the Monell claim must be dismissed, the motion is **GRANTED**.

## CONCLUSION

For the reasons stated above, Officer Buice's Motion to Dismiss [Doc. 9] is

**DENIED** and Clayton County and Officer McKay's Motion to Dismiss is

**GRANTED IN PART AND DENIED IN PART**.  As to the remaining claims,

the parties are **DIRECTED** to file their Joint Preliminary Report and Discovery

Plan no later than July 16, 2026.

    **SO ORDERED** this 1st day of July, 2026.

                                    J. P. BOULEE
                                    United States District Judge